**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

08-20443-CR-MORENO/TORRES

Case No.

18 U.S.C. § 371
18 U.S.C. § 1349
18 U.S.C. § 287
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA,

vs.

CARLOS CONTRERAS
and
RAMON PICHARDO,



FILED by _____ D.C.

MAY 2 2 2008

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

     **Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

1. The Medicare Program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.    "Part B" of the Medicare program paid Medicare providers and suppliers for covered goods and services, including medically necessary Human Immunodeficiency Virus ("HIV") infusion therapy, that were provided and ordered by physicians, clinics, and other qualified health care providers. Medicare Part B was administered in Florida by First Coast Service Options, a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims, including HIV infusion therapy claims.

4.    Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

5.    Physicians, clinics and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that had been performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services.

6.    C.N.C. Medical Corp. ("CNC Medical") was a Florida corporation, purportedly doing business at 1393 S.W. 1st Avenue, Suite #320, Miami, Florida. Corporate records display a business address of 1383 S.W. 1st Avenue, Suite #320, Miami, Florida. CNC Medical was a medical clinic that purported to specialize in treating patients with HIV by providing infusion therapy. From in or around November 2002 through in or around April 2004, approximately $6.8 million in claims

-2-

were submitted to the Medicare program for HIV infusion services allegedly rendered at CNC Medical.

7.   Defendant **CONTRERAS**, a resident of Miami-Dade County, was a medical doctor who purported to order and provide HIV infusion services to Medicare beneficiaries at CNC Medical. **CONTRERAS** was also the president, director, and registered agent of CNC Medical.

8.   Defendant **RAMON PICHARDO,** a resident of Miami-Dade County, was a medical doctor who purported to order and provide HIV infusion services to Medicare beneficiaries at CNC Medical.

9.   From in or around November 2002 through in or around April 2004, CNC Medical submitted claims to Medicare under the provider number of CNC Medical, which was 03813.

## COUNT 1
### Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.   Paragraphs 1 through 9 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.   From in or around November 2002, through in or around April 2004, the exact dates being unknown to the Grand Jury, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### CARLOS CONTRERAS
### and
### RAMON PICHARDO,

and others known and unknown to the Grand Jury, did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the

-3-

United States, that is,

a.    to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.    to make and present claims upon and against the United States Department of Health and Human Services, a department and agency of the United States, for purportedly medically necessary HIV infusion therapy medications, knowing such claims to be false, fictitious, and fraudulent, in violation of Title 18, United States Code, Section 287;

c.    to knowingly and willfully offer and pay any remuneration, including cash kickbacks and bribes, directly and indirectly, overtly and covertly, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, and to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, service, and item for which payment may be made in whole and in part by Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

## PURPOSE OF THE CONSPIRACY

3.    It was the purpose of the conspiracy for **CARLOS CONTRERAS, RAMON PICHARDO,** and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare; (b) offering and paying cash kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their

-4-

Medicare beneficiary numbers by the conspirators as the bases of claims filed for HIV infusion therapy; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds of the fraud, the payment of kickbacks, and the true owners of CNC Medical; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

The manner and means by which **CARLOS CONTRERAS, RAMON PICHARDO**, and their co-conspirators, known and unknown to the Grand Jury, sought to accomplish the objects and purpose of the conspiracy included, among other things, as follows:

4.      **CARLOS CONTRERAS** would cause the establishment and incorporation of CNC Medical in the State of Florida and serve as president, director, and registered agent of CNC Medical.

5.      **CARLOS CONTRERAS** would work as a physician at CNC Medical, and be an authorized signer on the CNC Medical bank accounts.

6.      **RAMON PICHARDO** would work as a physician at CNC Medical.

7.      **CARLOS CONTRERAS, RAMON PICHARDO**, and their co-conspirators, known and unknown to the Grand Jury, would cause unnecessary tests to be ordered, medical forms to be signed, and treatments to be authorized to make it appear that legitimate services were being provided to Medicare beneficiaries at CNC Medical.

8.      **CARLOS CONTRERAS, RAMON PICHARDO**, and their co-conspirators, known and unknown to the Grand Jury, would cause the payment of cash kickbacks to Medicare beneficiaries in exchange for the patients signing documents at CNC Medical stating that they had received the treatments that were billed to Medicare, when those treatments were not provided and were not medically necessary.

9. **CARLOS CONTRERAS, RAMON PICHARDO**, and their co-conspirators, known and unknown to the Grand Jury, would cause the submission of approximately $6.8 million in claims to the Medicare program under the provider number of CNC Medical, for services that were never provided and services that were not medically necessary.

10. After reimbursements from Medicare were deposited into CNC Medical's bank accounts, **CARLOS CONTRERAS** and his co-conspirators, known and unknown to the Grand Jury, would cause to transfer approximately $1.7 million to sham management, marketing and investment companies owned and operated by their co-conspirators, and approximately $244,000 to other fraudulent HIV infusion clinics owned and operated by their co-conspirators.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects and purpose, at least one of the conspirators committed, or caused to be committed, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the following overt acts, among others:

1. On or about January 29, 2003, **CARLOS CONTRERAS** tendered a check to Allstar Medical Management ("Allstar Medical") in the approximate amount of $140,855 for sham management services.

2. On or about August 6, 2003, **RAMON PICHARDO** deposited a check from CNC Medical to Pichardo Medical Services, in the approximate amount of $36,000, for purported medical services he provided at CNC Medical.

3. On or about September 26, 2003, **RAMON PICHARDO** deposited a check from CNC Medical to Pichardo Medical Services, in the approximate amount of $11,000, for purported medical services he provided at CNC Medical.

4.     On or about November 24, 2003, **RAMON PICHARDO** deposited a check from CNC Medical to Pichardo Medical Services, in the approximate amount of $21,500, for purported medical services he provided at CNC Medical.

5.     On or about February 16, 2004, **CARLOS CONTRERAS** caused a claim to be submitted to the Medicare program for 150 units of Rho (D) immune globulin allegedly provided to Medicare beneficiary A.O. at CNC Medical.

6.     On or about March 1, 2004, **CARLOS CONTRERAS** caused a claim to be submitted to the Medicare program for 375 international units ("IUs") of Rho (D) immune globulin allegedly provided to Medicare beneficiary F.C. at CNC Medical.

7.     On or about March 1, 2004, **CARLOS CONTRERAS** caused a claim to be submitted to the Medicare program for 250 IUs of Rho (D) immune globulin allegedly provided to Medicare beneficiary A.F. at CNC Medical.

8.     On or about March 4, 2004, **CARLOS CONTRERAS** tendered a check to America Consulting, Inc. in the approximate amount of $34,804 for sham consulting services.

9.     On or about March 7, 2004, **CARLOS CONTRERAS** tendered a check to CVS Trading, Inc. in the approximate amount of $83,086.62 for sham management services.

10.     On or about March 19, 2004, **CARLOS CONTRERAS** tendered a check to America Consulting, Inc. in the approximate amount of $35,750 for sham consulting services.

11.     On or about March 19, 2004, **CARLOS CONTRERAS** tendered a check to I&A Consulting, Inc. in the approximate amount of $20,000 for sham consulting services.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 9 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around November 2002, through in or around April 2004, the exact dates being unknown to the Grand Jury, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### CARLOS CONTRERAS
### and
### RAMON PICHARDO,

did knowingly and willfully combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for **CARLOS CONTRERAS, RAMON PICHARDO,** and their co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting false and fraudulent claims to Medicare; (b) offering and paying cash kickbacks and bribes to Medicare beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare beneficiary numbers by the conspirators as the bases of claims filed for HIV infusion therapy; (c) concealing the submission of false and fraudulent claims to Medicare, the receipt and

transfer of the proceeds from the fraud, the payments of kickbacks; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## MANNER AND MEANS

4.      The allegations in paragraphs 4 through 10 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated as though fully set forth herein as a description of the Manner and Means of this conspiracy.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 3 - 5
### Submission of False Claims
### (18 U.S.C. §§ 287 and 2)

1.      Paragraphs 1 through 9 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### CARLOS CONTRERAS,

and others did make and present and cause to be made and presented to a person or officer in the civil, military, and naval service of the United States, and to a department and agency thereof, the following claims upon and against the United States Department of Health and Human Services, a department and agency of the United States, knowing such claims to be false, fictitious, and fraudulent:

| COUNT | Medicare Beneficiary | On or about Claim Date | Description of Outpatient Service | Approximate Amount Paid by Medicare |
|---|---|---|---|---|
| 3 | A.O. | 2/16/2004 | 150 IUs of Rho (D) immune globulin | $2,206 |

| COUNT | Medicare Beneficiary | On or about Claim Date | Description of Outpatient Service | Approximate Amount Paid by Medicare |
|-------|---------------------|------------------------|----------------------------------|-------------------------------------|
| 4 | F.C. | 3/1/2004 | 375 IUs of Rho (D) immune globulin | $5,517 |
| 5 | A.F. | 3/1/2004 | 250 IUs of Rho (D) immune globulin | $3,678 |

In violation of Title 18, United States Code, Sections 287 and 2.

## COUNT 6
## Money Laundering Conspiracy
## (18 U.S.C. § 1956(h))

From in or around November 2002, through in or around April 2004, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

## CARLOS CONTRERAS
## and
## RAMON PICHARDO,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, and agree with other persons, known and unknown to the Grand Jury, to commit offenses against the United States, to wit, to knowingly engage in a monetary a transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1956(h).

-10-

## COUNTS 7-12
**Money Laundering**
**(18 U.S.C. §§ 1957 and 2)**

On or about the date specified as to each count below, in Miami-Dade County, in the Southern

District of Florida, and elsewhere, the defendants,

## CARLOS CONTRERAS
### and
### RAMON PICHARDO,

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting

interstate commerce, in criminally derived property of a value greater than $10,000, such property

having been derived from a specified unlawful activity:

| Count | Defendant | On or about Date | Monetary Transaction |
|---|---|---|---|
| 7 | **RAMON PICHARDO** | 3/4/2004 | Check in the approximate amount of $34,804.93, drawn on a CNC Medical account at City National Bank of Florida, made payable to "America Consulting, Inc," cashed at Maytemar Corp., a/k/a La Bamba Check Cashing. |
| 8 | **RAMON PICHARDO** | 3/19/2004 | Check in the approximate amount of $35,750, drawn on a CNC Medical account at City National Bank of Florida, made payable to "America Consulting, Inc.," cashed at Maytemar Corp., a/k/a La Bamba Check Cashing. |
| 9 | **RAMON PICHARDO** | 3/19/2004 | Check in the approximate amount of $20,000, drawn on a CNC Medical account at City National Bank of Florida, made payable to "I&A Consulting Service, Inc.," cashed at Maytemar Corp., a/k/a La Bamba Check Cashing. |
| 10 | **CARLOS CONTRERAS** | 3/24/2004 | Check in the approximate amount of $34,804.93, drawn on a CNC Medical account at City National Bank of Florida, made payable to "America Consulting, Inc," cashed at Maytemar Corp., a/k/a La Bamba Check Cashing. |

-11-

| Count | Defendant | On or about Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| 11 | **CARLOS CONTRERAS** | 3/19/2004 | Check in the approximate amount of $35,750, drawn on a CNC Medical account at City National Bank of Florida, made payable to "America Consulting, Inc.," cashed at Maytemar Corp., a/k/a La Bamba Check Cashing. |
| 12 | **CARLOS CONTRERAS** | 3/19/2004 | Check in the approximate amount of $20,000, drawn on a CNC Medical account at City National Bank of Florida, made payable to "I&A Consulting Service, Inc.," cashed at Maytemar Corp., a/k/a La Bamba Check Cashing. |

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1957 and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.     The allegations contained in Counts 1-12 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **CARLOS CONTRERAS** and **RAMON PICHARDO** have an interest pursuant to Title 18, United States Code, Section 982.

2.     Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of **CARLOS CONTRERAS** and **RAMON PICHARDO**, for any of the health care fraud offenses charged in this Indictment, Counts 1-5, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

3. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of **CARLOS CONTRERAS** and **RAMON PICHARDO** for the money laundering offenses charged in this Indictment, Counts 6-12, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

4. If more than one defendant is convicted for an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

5. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 928(b)(1).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7).

A TRUE BILL

FOREPERSON

_____
R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

_____
KIRK OGROSKY
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U. S. DEPARTMENT OF JUSTICE


_____
CONSTANTINE LIZAS
TRIAL ATTORNEY
CRIMINAL DIVISION, ASSET FORFEITURE
AND MONEY LAUNDERING SECTION
U.S. DEPARTMENT OF JUSTICE

-14-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA          CASE NO. _____

vs.

CARLOS CONTRERAS, et al.,          **CERTIFICATE OF TRIAL ATTORNEY***

                    Defendants.
_____/          **Superseding Case Information:**

**Court Division:** (Select One)          New Defendant(s)          Yes ____    No ____
                                          Number of New Defendants
  X   Miami  ____  Key West              Total number of counts          ____
 ____ FTL    ____  WPB    ____  FTP

        I do hereby certify that:

        1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of
              probable witnesses and the legal complexities of the Indictment/Information attached hereto.

        2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this
              Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act,
              Title 28 U.S.C. Section 3161.

        3.    Interpreter:    (Yes or No)        Yes
              List language and/or dialect              Spanish

        4.    This case will take    _10_   days for the parties to try.

        5.    Please check appropriate category and type of offense listed below:

              (Check only one)                          (Check only one)

         I    0 to 5 days                               Petty      _____
         II   6 to 10 days         __X__                Minor      _____
         III  11 to 20 days        _____               Misdem.    _____
         IV   21 to 60 days        _____               Felony     __X__
         V    61 days and over     _____

        6.    Has this case been previously filed in this District Court? (Yes or No)    No
        If yes:
        Judge: _____    Case No. _____
        (Attach copy of dispositive order)
        Has a complaint been filed in this matter?    (Yes or No)    No
        If yes:
        Magistrate Case No. _____
        Related Miscellaneous numbers: _____
        Defendant(s) in federal custody as of _____
        Defendant(s) in state custody as of _____
        Rule 20 from the _____    District of _____

        Is this a potential death penalty case? (Yes or No)    No

        7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior
              to October 14, 2003?  _____ Yes  __X__ No

        8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior
              to September 1, 2007?  _____ Yes  __X__ No


                                   _____  by  N. Nathan
                                   CONSTANTINE LIZAS                Dimock
                                   TRIAL ATTORNEY, DOJ


*Penalty Sheet(s) attached                                          REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   CARLOS CONTRERAS

**Case No:**

**Count #:  1**

Conspiracy to Defraud the United States, to Cause the Submission
of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max. Penalty:**   5 years' imprisonment

**Count #:  2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:**   10 years' imprisonment

**Counts #:  3-5**

Submission of False Claims

18 U.S.C. § 287

**\*Max. Penalty:**   5 years' imprisonment as to each count

**Count #:  6**

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**   20 years' imprisonment

**Counts #:  10-12**

Money Laundering

18 U.S.C. § 1957

**\*Max. Penalty:**   10 years' imprisonment as to each count

**Count #:**



**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   RAMON PICHARDO

**Case No:**

**Count #:  1**

Conspiracy to Defraud the United States, to Cause the Submission of False Claims, and to Pay Health Care Kickbacks

18 U.S.C. § 371

**\* Max.Penalty:**   5 years' imprisonment

**Count #:  2**

Conspiracy to Commit Health Care Fraud

18 U.S.C. § 1349

**\*Max. Penalty:**   10 years' imprisonment

**Count #: 6**

Money Laundering Conspiracy

18 U.S.C. § 1956(h)

**\*Max. Penalty:**   20 years' imprisonment

**Counts #: 7-9**

Money Laundering

18 U.S.C. § 1957

**\*Max. Penalty:**   10 years' imprisonment as to each count

**Count #:**

**\*Max. Penalty:**

**Count #:**

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**